UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  | |
| )  | |
| Plaintiff,  )  | |
| )  | No. 4:17CR00532HEA |
| v.  )  | |
| )  | |
| TALEB JAWHER,  )  | |
| )  | |
| Defendant.  )  | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and John J. Ware, Assistant United States Attorney for said District, and responds to the defendant's sentencing memorandum as follows:

1. BACKGROUND

The parties agree that, pursuant to U.S.S.G. § 2K2.1(c)(1)(B), the most analogous offense guideline in Chapter 2, Part A, Subpart 1 (Homicide) is cross-referenced and applied in defendant's case because during his possession of a firearm, death resulted. However, the parties disagree as to which is the most analogous guideline section.

Defendant objects to the PSI which cross-references the second-degree murder guideline (§2A1.2) and argues instead for the application of the involuntary manslaughter guideline (2A1.4). The Government believes the PSI is correct and that second-degree murder is the most analogous offense guideline to defendant's conduct. To assist the Court, and by consent of the parties, a copy of the store surveillance system which recorded some of the incident is included as an exhibit to this response.

2. APPLICABLE LAW

In applying the cross-referencing required by § 2K2.1(c)(1)(B), the court must "determine what Federal homicide offense was most analogous to the conduct it found that defendant had committed." United States v. Hicks, 389 F.3d 514, 530 (5th Cir. 2004). This determination must be supported by a preponderance of the evidence. United States v. Tunley, 664 F.3d 1260, 1262 (8th Cir. 2012) (finding that preponderance of the evidence demonstrated second-degree murder).

"Murder is the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111. "Manslaughter is the unlawful killing of a human being without malice." 18 U.S.C. § 1112. "Malice is defined by awareness that one's conduct is made with "a serious risk of death or serious bodily harm" to another. United States v. Cottier, 908 F. 3d 1141, 1146 (8th Cir. 2018). Although defendant acted with malice, he did so without deliberation, thus second degree murder is the most analogous offense under U.S.S.G. § 2A1. Voluntary manslaughter and involuntary manslaughter, which both encompass an unlawful killing without malice, do not apply to the facts of the case. Each offense is discussed in turn below.

3. ANALYSIS

**Second Degree Murder**

"Malice may constitutionally be presumed from a killing accomplished by the use of a deadly weapon upon a vital part of the body." Williamson v. Jones, 936 F.2d 1000, 1003 (8th Cir. 1991). To beat someone on the head with a handgun is to act with malice. See United States v. Black Elk, 579 F.2d 49, 51 (8th Cir. 1978) (upholding second degree murder conviction where beating with hands and feet resulted in death). Malice does not necessitate a "subjective intent to kill," but can be demonstrated by actions that are "reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that

2

defendant was aware of a serious risk of death or serious bodily harm." Id. (quoting United States v. Cox, 509 F.2d 390, 392 (D.C. Cir. 1974)).

"Malice aforethought does not mean simply hatred or ill will, but also embraces the state of mind with which one intentionally commits a wrongful act without legal justification or excuse." United States v. Celestine, 510 F.2d 457, 459 (9th Cir. 1975) (determining that act of beating and inserting stick into victim's vagina was malicious). "[W]hen the assailant acts with awareness of a serious risk of death or serious bodily harm," he acts with malice. United States v. Gonzalez, 399 Fed. Appx. 641, 647 (2d Cir. 2010); United States v. Graham, 323 F.3d 603, 609 (8th Cir. 2003) (holding that methamphetamine cook committed second degree murder by unintentionally starting fire which killed another); United States v. Sheffey, 57 F.3d 1419, 1431 (6th Cir. 1995) (finding that intoxicated reckless driver acted maliciously in striking pedestrian).

In this case, defendant's malicious intent is established by his actions over the course of his interaction with the victim. Surveillance footage shows that defendant, while behind the counter, pointed his handgun at victim from mere feet away. As the victim was leaving the store, defendant then moved around the counter to deliberately reengage with the victim. In the ensuing altercation, defendant alternates between pointing the gun at the victim and beating him with it.

The finding of malice, required for a murder charge, rather than negligence, which would establish only manslaughter, "is one of degree rather than kind." United States v. Fleming, 739 F.2d 945, 948 (4th Cir. 1984) (referencing United States v. Dixon, 419 F.2d 288, 292–293 (D.C. Cir. 1969)) (the distinction between murder and manslaughter is determined by the accused's "quality of awareness of the risk"). General common sense alone is sufficient to appreciate the danger of serious bodily harm posed by striking someone over the head with a loaded gun, both from the direct impact and the possibility that the gun will fire. c.f. United States v. Lasley, 832 F.3d 910, 913 (8th Cir. 2016) and cases cited therein. Additionally, defendant has first-hand

knowledge that should have heightened his awareness of the risk. Defendant's criminal history includes an arrest in 2010 for an incident with factual similarities to the instant case. See PSI, para. 49.  During an argument with neighbors, defendant handed his wife a handgun, which she used to beat the individual with whom she was arguing. As she was striking the individual, the gun fired, hitting the individual in the hand. This incident serves as a demonstration to the defendant that a gun may well fire when being used as a bludgeon. Defendant's wanton disregard for this risk, along with the inherent risk of beating someone with a heavy metal object, establishes malice, and thus the applicability of the second degree murder guideline provision.

**Voluntary Manslaughter**

Voluntary manslaughter is defined in federal law as the "unlawful killing of a human being without malice . . . upon a sudden quarrel or heat of passion." 18 U.S.C. § 1112. In order to establish voluntary manslaughter, the government must demonstrate that the defendant "(1) voluntarily, intentionally, and unlawfully killed [the victim]; (2) acted in the heat of passion caused by adequate provocation; and (3) was not acting in self defense." United States v. Chase, 451 F.3d 474, 479 (8th Cir. 2006).

To act in the heat of passion, defendant must be in an emotional state "induced by anger, fear, inducement, terror, or rage." United States v. Bordeaux, 980 F.2d 534, 537 (8th Cir. 1992). Provocation must be subjective – the defendant must have actually been provoked – and objectively adequate – the provocation would cause a reasonable person to act on that impulse or lose self-control. Id. (citing Devitt, Blackmar, and O'Malley, Federal Jury Practice and Instructions § 38A.08 (1992 Supp.)). There also must not have been sufficient time between the provocation and killing for the defendant to reflect on his or her intended conduct. Id. at 538 (citing Collins v. United States, 150 U.S. 62, 65 (1893)).

4

A "heat of passion" argument cannot be supported by present facts, as the circumstances fail to subjectively and objectively prove provocation. The defendant himself did not appear to become provoked while interacting with the non-aggressive, if intoxicated, victim, until defendant suddenly pointed a gun at the victim and then rapidly approached him. Seconds after the altercation outside, during which the defendant's gun fired and struck the victim, defendant calmly walked back into the store, and served another customer, undermining the credibility of any claim that he lost control.

Further, the alleged provocation does not meet the bar for what would cause a reasonable person to have an extreme reaction. The victim did not act in a threatening way. The action that prompted defendant's response was allegedly shoplifting a candy bar. (Guilty Plea Agreement at 3.) Given the low value of the candy bar and the lack of otherwise confrontational actions, the victim's behavior cannot constitute provocation.

Federal self-defense is a matter of common law rather than federal statute, with federal courts often relying on state court decisions and state laws for guidance. United States v. Desinor, 525 F.3d 193, 199 (2d Cir. 2008) (citing United States v. Butler, 485 F.3d 569, 572 n. 1 (10th Cir. 2007)); see also United States v. Tunley, 664 F.3d 1260, 1262 n.3 (8th Cir. 2012) (discussing Missouri self-defense standards to determine applicability to analogous homicide offense under U.S.S.G. § 2K2.1(c)(1)). Under Missouri law, in order to prove one was acting in self-defense, the evidence must demonstrate "(1) an absence of aggression or provocation on the part of the defender; (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death; (3) a reasonable cause for the defendant's belief in such necessity; and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life." United States v. Betts, 509 F.3d 441, 446 (8th Cir. 2007) (applying Missouri law to determine

appropriate United States Sentencing Guideline enhancement under U.S.S.G. 2K2.1 for a felon in possession of a firearm during commission of another felony). Specifically, "[a] self-defense instruction is not appropriate if the defendant renewed or continued the confrontation, because behavior of that sort is inconsistent with the requirement that defendant avoid the danger and the need to take a life." Id. The principle that self-defense is not available to an aggressor has been repeated in other federal courts. See e.g., United States v. Desinor, 525 F.3d 193, 198 (2d Cir. 2008) (citing DeLuca v. Lord, 77 F.3d 578, 586 (2d Cir. 1996) ("an aggressor in a conflict resulting in death may not claim self-defense"); United States v. Grover, 485 F.2d 1039, 1042 (D.C. Cir. 1973) ("generally the defense of self-defense is not available to one who provokes the difficulty . . . [unless] he attempts in good faith to disengage himself from the altercation and communicates his desire to do so to his opponent"). Based on the defendant's unprovoked aggression, the lack of danger posed by the victim, and the fact that defendant reinitiated the interaction when it could have ended, he is disqualified from a claim of self-defense.

**Involuntary Manslaughter**

Involuntary manslaughter is defined in federal law as the "unlawful killing of a human being without malice . . . in the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112. Unlike voluntary manslaughter, which acts as a partial defense to murder by demonstrating that the action taken was intentional but done in the heat of passion, involuntary manslaughter generally occurs when the defendant lacks the mental state to commit murder. United States v. Steward, 880 F.3d 983, 987 (8th Cir. 2018). Involuntary manslaughter cases frequently involve fatal accidents caused by a defendant driving while intoxicated. See e.g., United States v. Grace, 893 F.3d 522 (8th Cir. 2018) (upholding involuntary manslaughter conviction and upward variance for defendant involved in fatal

automobile accident while intoxicated); New v. United States, 652 F.3d 949, 951 (8th Cir. 2011) (affirming two counts of involuntary manslaughter after defendant, under the influence of marijuana and alcohol, lost control of vehicle, resulting in death of two passengers); United States v. Singer, 825 F.3d 1151, 1153-54 (10th Cir. 2016) (affirming sentencing enhancement after guilty plea to involuntary manslaughter for fatally striking pedestrian while driving intoxicated). In contrast, defendant here demonstrated intent to harm, and therefore the necessary malice, by first pointing the gun at the victim, then chasing him and beating him repeatedly over the head. (Guilty Plea Agreement at 3.)

Moreover, § 1112 requires that if the death is caused during the commission of an unlawful act, the act must not constitute a felony to qualify as involuntary manslaughter. During the altercation with the victim, the defendant was knowingly committing felonies, possessing a firearm while an illegal alien, in violation of 18 U.S.C. § 922(g)(5)(A), and violently beating victim with the gun, behavior consistent with, at a minimum, second degree assault, in violation of Mo. Rev. Stat. § 565.060 (includes "attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument"). Either felony disqualifies defendant from consideration of the involuntary manslaughter cross-reference.

4. DEFENDANT'S CONTENTIONS

No doubt in order to escape the inevitability of the application of the second degree cross reference given Federal law, Defendant suggests that State of Missouri law, not Federal law, should be referenced in the cross-referencing task. Defendant makes this wrong assertion by citing United States v. Howe, 538 F.3d 842 (8th Cir. 2008). Howe itself doesn't stand for this proposition, but simply reiterates the preponderance of evidence standard of proof. The pertinent issue in Howe involved sentencing following conviction for possession of a firearm by a felon. The court applied the first degree cross-reference because the firearm was possessed during a

conspiracy to kidnap which resulted in death, despite the jury's inability to reach a decision on Howe's participation in the conspiracy and outright acquittal of the felony murder charge. In upholding the first degree murder cross-reference, the Eighth Circuit merely emphasized that at sentencing the government need only prove that defendant committed the offense by a preponderance of the evidence and the Court's decision to hold defendant culpable for acquitted conduct was perfectly consistent with the varying degrees of proof. To conflate this holding into requiring inapplicable jurisdictional requisites, especially in the face of contrary law, is a stretch indeed. See United States v. Ashford, 718 F.3d 377, 384 (4th Cir. 2013); United States v. Walls, 80 F.3d 238, 242 (7th Cir. 1996); United States v. Smith, 5 F.3d 259, 261 (7th Cir. 1993) (2nd degree murder cross-referenced in felon in possession of a firearm case for randomly shooting, and killing someone, despite State conviction of involuntary manslaughter for same behavior).

However, even if State of Missouri rather than Federal, homicide law is applicable, the result remains the same. "Under Missouri law, . . . second degree murder occurs when . . . a person, with the purpose of (knowingly) causing serious physical injury to another person, causes the death of the other person." Weston v. Dormire, 272 F.3d 1109, 1110 (8th Cir. 2001); RSMO 565.021.

"A person acts knowingly; or with knowledge:

(1) With respect to his or her conduct or to attendant circumstances when he or she is aware of the nature of his or her conduct or that those circumstances exist; **or** (emphasis added)

(2)  With respect to a result of his or her conduct when he or she is aware that his or her conduct is practically certain to cause that result. RSMO 562.016.3.

Missouri case law that addresses the legal definitions of second degree murder vis-a-vis involuntary manslaughter reflect this similarity and confirm that only non-malicious actors are afforded involuntary manslaughter consideration. See State v. Lowe, 318 S.W. 3d 812, 818 (Mo.

8

App. W.D. 2010) (no involuntary manslaughter instruction when defendant fatally hit victim on head with hammer); State v. Smith, 891 S.W. 2d 461, 467-68 (Mo. App. W.D. 1994) (no involuntary manslaughter instruction when defendant fatally drove vehicle into a crowd); State v. Coffman, 378 S.W. 3d 405, 408-09 (Mo. App. E.D. 2012) (no involuntary manslaughter instruction when defendant held gun to victim's head in moving car but claimed the car's jerking caused him to inadvertently pull the trigger); State v. James, 267 S.W. 3d 832 (Mo. App. S.D. 2008) (no involuntary manslaughter instruction when defendant struggled with assailant over rifle and assailant was shot, noting the difference between this and reckless behavior of showing off gun, waving it around, and accidentally discharging).

Defendant has cited seven Missouri State cases, three of which he claims support his contention that accidentally discharging a weapon is reckless conduct and thus constitutes involuntary manslaughter when death results. However, these cases actually do not support defendant's position. In State v. Hayes, 88 S.W. 3d 47, 56, Ft. # 5 (Mo. App. W.D. 2002), defendant's involuntary manslaughter conviction was legally upheld precisely because defendant testified that he meant to shoot the firearm but didn't care whether he shot the victim or not, meeting the statutory definition of reckless. Defendant also cites State v. Miller, 772 S.W. 2d 782 (Mo. App. S.D. 1989). The problem with this case is that the legal theory underpinning its holding that accidentally discharging a firearm and causing death qualified as involuntary manslaughter was abrogated by State v. Beeler, 12 S.W. 3d 294 (S.Ct.Mo. 2000). Beeler specifically cites Miller as relying on bad case lineage derived from a repealed statute. Defendant's third cited case, State v. Jennings, 887 S.W. 2d 752 (Mo. App. W.D. 1994) is equally worthless as it cites Miller as authority for its holding. The other four cases cited by defendant are examples of second-degree murder charges but do not specifically contrast that with involuntary manslaughter, thus they are of little worth to this discussion.

One further point. Defendant, citing State v. Shade, an 1878 case, claims that the "merger doctrine" prohibits consideration of the felony-murder aspect of the Missouri second degree murder statute. However, the merger doctrine, "under the current Missouri statutory scheme, is no longer a viable theory." State v. Gheen, 41 S.W. 3d 598, 605 (Mo. App. W.D. 2001); State v. Tuttle, 519 S.W. 3d 443, 446 (Mo. App. S.D. 2016). Thus, defendant is guilty of State second-degree murder because the victim's death occurred while he was committing a felony by assaulting him with the firearm.

In short, although worded slightly differently, the Federal and Missouri statutory definitions of second degree murder are virtually the same.

5. CONCLUSION

"Mercy but murders, pardoning those that kill." *Romeo and Juliet*, Act 3, Scene 1, 1.159. Defendant pleads for a five-year sentence. By doing so he continues to value the life of C.S. as nearly worthless, just as he did on the night of September 26, 2017. Any sentence below the statutory maximum of 10 years would amount to pardoning defendant for his malicious criminal conduct that led to the loss of life.

        Respectfully submitted,

        JEFFREY B. JENSEN
        United States Attorney

        */s/ John J. Ware*
        JOHN J. WARE, #40880MO
        Assistant United States Attorney
        111 South 10th Street, Room 20.333
        St. Louis, Missouri  63102

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                          */s/ John J. Ware*
                          JOHN J. WARE, #40880MO
                          Assistant United States Attorney