UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) No. 4:17 CR 532 HEA |
| v. | ) |
| TALEB JAWHER, | ) |
| Defendant. | ) |

**GOVERNMENT'S TRIAL BRIEF**

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and John J. Ware, Assistant United States Attorney for said District, and submits the following trial brief.

**I.  FACTS**

Defendant, a Jordanian passport holder, obtained a one-month visitor B-2, non-immigrant visa. Defendant entered the United States on May 13, 2007, and was authorized to stay until June 12, 2007.

On June 7, 2007, defendant applied for an extension of stay to CIS. This application was denied by CIS on August 2, 2007. A notice of this decision was mailed to defendant on August 13, 2007. The notice informed defendant that his application for extension was denied, that he was without lawful immigration status, and that he was required to depart the United States.

On October 27, 2008, defendant married Brandi Jawher, nee Harris, a U.S. citizen, in Belleville, Illinois. Based on that marriage, Brandi Jawher filed an I-130 petition on March 8, 2009, seeking permanent resident status for defendant. Defendant filed an accompanying I-485,

application for permanent residence.  Both petitions acknowledged that defendant's authorized stay in the United States expired on June 12, 2007.

On April 26, 2010, CIS notified Brandi Jawher of its intent to deny her petition based on false statements submitted by defendant.  This decision was finalized on December 10, 2014.  Likewise, defendant was notified that his application was denied on December 19, 2014, and that he was "not qualified to adjust status."

On June 24, 2015, defendant was served by certified mail with a Notice to Appear for removal proceedings.  Defendant was informed that the basis for his removal was that he was an alien who had overstayed his B-2 visitor visa and was not authorized to stay in the United States.  Two days later, on June 29, 2015, defendant filed another I-485, along with another I-130 by Brandi Jawher.  Again defendant acknowledged in his application that his visa expired on June 12, 2007.  On August 7, 2015, CIS informed defendant that his I-485 application was denied as he was in removal proceedings.  Defendant was released without bond and granted employment during the pendency of his removal proceedings.

On the night of September 26, 2017, Jawher was working as a store clerk at the Phillips 66 at 2800 N. Florissant, St. Louis, Missouri.  At approximately 9:00 p.m., Christopher Simmons entered the Phillips 66 store and attempted to purchase a candy bar.  Jawher refused the sale - presumably Simmons did not provide enough money to purchase the candy bar - and an argument ensued.  Simmons started to walk towards the door with a candy bar, but threw it on a store shelf prior to exiting.  Jawher retrieved a firearm and pointed it at Simmons.  Jawher then pursued Simmons as he exited the store.

Jawher approached Simmons from the back and shoved him out the front door. The ensuing physical altercation was partially captured on the gas station in-store surveillance system. Jawher struck Simmons with the butt of the firearm multiple times. The firearm discharged during one of these strikes and Simmons suffered a gunshot wound to the head. Simmons died at the scene as a result of the gunshot wound.

Jawher called 911 and told the operator that he shot someone. The police secured the scene and recovered both the firearm and video from the in-store surveillance system.

## II.  ELEMENTS OF THE OFFENSE

Defendant Jawher is charged with being an alien in possession of a firearm in violation of 18 USC § 922(g)(5). The essential elements of an 18 USC § 922(g)(5) charge are that defendant is 1) an alien; 2) illegally present or admitted as a non-immigrant into the United States; 3) knew, or reasonably should have known, his prohibitive status; 4) knowingly possessed a firearm; and 5) the firearm was transported in interstate commerce during or before defendant's possession of it. United States v. Rehaif, 868 F.3d 907 (11th Cir. 2017); United States v. Diaz, 519 F.3d 56, 63 (1st Cir. 2008).

An alien is defined as "Any person not a citizen or national of the United States." C.F.R. § 478.11; 8 USC § 1101(a)(3). An alien is unlawfully present in the United States if he is not in valid immigrant, non-immigrant or parole status, such as an alien that enters the country without inspection or one that overstays or violates the terms of a non-immigrant visa. Id. An alien admitted to the United States on a valid visa, becomes illegally present if he remains after the expiration of the visa. United States v. Cammock, 29 F.3d 623 (5th Cir. 1994). In fact, even if

not expired, if the alien violates the conditions of the visa he is illegally present in the United States. United States v. Atandi, 376 F.3d 1186 (10th Cir. 2004).

This is true even if the alien has filed an application for an adjustment of status with United States Citizenship and Immigration Services (USCIS). United States v. Latu, 479 F.3d 1153 (9th Cir. 2007). The pending nature of the application does not alter an alien's status either. Id.; United States v. Brissett, 720 F.Supp. 90.

While applications to adjust status are pending, USCIS often grants employment authorization to an alien. However, the granting of employment authorization does not nullify the illegal status of the alien. United State v. Barzargan, 992 F.2d 844 (8th Cir. 1993; United States v. Lucio, 428 F.3d 519 (5th Cir. 2005); United States v. Ochoa-Colchado, 521 F.3d 1292, 1298 (10th Cir. 2008). Nor does the fact that the alien has been granted an administrative bond after being detained. United States v. Bravo-Muzquiz, 412 F.3d 1052, 1055 (9th Cir. 2005).

While aliens who are paroled into the United States, United States v. Balde, 943 F.3d 73 (2d Cir. 2019), or granted temporary protected status (TPS), United States v. Orellana, 405 F.3d 360 (5th Cir. 2005), are considered legally present, an alien granted DACA relief is not. United States v. Arrieta, 862 F.3d 512, (5th Cir. 2017).

Since Rehaif, the Government must prove that the alien knew that "he belonged to the relevant category of persons barred from possessing a firearm." Rehaif v. United States, 139 S. Ct. 2191, 2197 (2019) ("the defendant's status is the 'crucial element' separating innocent from wrongful conduct"). This requires that defendant's knowledge of his status be established, not knowledge that his conduct was criminal.

4

Possession of a firearm can be actual or constructive and be sole or joint. United States v. Battle, 774 F.3d 504, 511 (8th Cir. 2014). Actual possession is direct and physical control over the weapon. United States v. Stoltz, 683 F.3d 934, 940 (8th Cir. 2012). "Constructive possession of the firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993). While mere physical proximity to a weapon alone does not establish constructive possession, knowledge of its presence combined with its control, does. United States v. Mann, 701 F.3d 274, 304-05 (8th Cir. 2012).

Knowledge is generally established through circumstantial evidence as there is rarely direct evidence of a defendant's knowledge as to a firearm's presence. United States v. Mann, 701 F.3d 274, 305 (8th Cir. 2012). "Prior possession of a firearm is directly relevant to proving later possession of that same weapon because it helps establish ownership or control of the weapon." United States v. Battle, 774 F.3d 504, 511 (8th Cir. 2014). Even evidence of a prior crime committed by the defendant with the same weapon is admissible due to its highly probative value in establishing possession. Id. Ammunition discovered with the weapon is also indicative of knowledge that the weapon is operative. United States v. Williams, 492 F. App'x 777, 779 (9th Cir. 2012).

If the firearm traveled in interstate commerce at some time, even prior to its possession, then the jurisdictional nexus is met. Scarborough v. United States, 431 U.S. 563 (1977); United States v. Schmidt, 571 F.3d 743, 747 (8th Cir. 2009). Evidence that the weapon was not manufactured in the state of Missouri, proves it traveled in interstate commerce at some point. United States v. Banks, 514 F.3d 769, 777 (8th Cir. 2008). The manufacturer's markings on the

5

firearm itself can establish in which state the weapon was made.  United States v. Bowling, 32 F.3d 326, 328 (8th Cir. 1994).  These principles apply to ammunition just as equally as to firearms.  United States v. Sanders, 35 F.3d 61 (2d Cir. 1994).

A firearm is defined as a weapon which "will or is designed to or may readily be converted to expel a projectile by the action of an explosive."  18 USC § 921(a)(3).  Thus the Government need only prove that a firearm was 'designed' to fire, not that it is actually capable of doing so.  United States v. Cloyd, 819 F.2d 836, 838 (8th Cir. 1987).

### III.  EVIDENTIARY ISSUES

1. Admissibility of Business Records

The Government intends to introduce into evidence defendant's alien file pursuant to Rule 803 of the Federal Rules of Evidence.  Among these records will be defendant's applications to adjust his status.  Courts have routinely admitted alien file records under the public records exception to the hearsay rule, Fed. R. Evid. 803(8).  United States v. Ramirez, 2013 WL 3367522 (D. Neb. 2013); United States v. Becerra-Valadez, 448 F. App'x 457, 461 (5th Cir. 2011); United States v. Torralba-Mendia, 784 F.3d 652, 665 (9th Cir. 2015); United States v. Caraballo, 595 F.3d 1214, 1226 (11th Cir. 2010); United States v. Agustino-Hernandez, 14 F.3d 42, 43 (11th Cir. 1994).  Because the A-File bears a sealed and signed certification, it is self-authenticating.  FRE Rule 902(1).

Admissibility of public records such as these are not reliant on foundational requirements, they "are presumed trustworthy placing the burden of establishing untrustworthiness on the opponent of the evidence."  United States v. Loyola-Dominiquez, 125 F.3d 1315, 1318 (9th Cir. 1997) quoting Montiel v. City of Los Angeles, 2 F.3d 335, 341 (9th

6

Cir. 1993). Nor does the admission of any of these documents run afoul of the confrontation clause. Crawford v. Washington, 541 U.S. 36 (2004); United States v. Urqhart, 469 F.3d 745, 748 (8th Cir. 2006) (certificate of non-existence of record); United States v. Cervantes-Flores, 421 F.3d 825 (9th Cir. 2005); United States v. Lorenzo-Lucas, 775 F.3d 1008, 1110 (8th Cir. 2014); United States v. Torres-Villalobos, 487 F.3d 607, 612 (8th Cir. 2007) (warrant of deportation).

2. Testimony of CIS Employees as Lay Witnesses

In conjunction with the admission of defendant's A-File, the Government will be presenting the testimony of Immigration Services Officer Jill Schreiner. Ms. Schreiner is an adjudicator with several years experience who has during the course of her duties processed applications for citizenship, permanent residency, and change of status. Ms. Schreiner will be explaining what an A-File is, what it contains, how it is maintained, the process by which CIS processes various documents contained in the A-File, and highlighting pertinent sections relative to the issue of defendant's knowledge of status. Ms. Schreiner will be testifying as a lay witness, not an expert, and thus FRE Rule 701 controls is admission.

"Rule 701 provides that if a witness is not testifying as an expert, then any testimony by the witness expressing his or her opinion or inferences is limited to those that are rationally based on the witness's perception and helpful to understanding the witness's testimony or determining a fact in issue." United States v. Smith, 591 F.3d 974, 982 (8th Cir. 2010). "Perceptions based on industry experience are sufficient foundation for lay opinion testimony." United States v. Smith, 591 F.3d 974, 982 (8th Cir. 2010).

7

As Ms. Schreiner's testimony is "grounded in first-hand knowledge of departmental protocol and experience accumulated in the realm of immigration work," it is admissible under FRE Rule 701, as lay witness testimony. United States v. Patel, 400 F. App'x 426, 435 (11th Cir. 2010). See United States v. Lemon, 792 F.3d 941, 949 (8th Cir. 2015) (ALJ and SSA hearing officer's opinion that defendant's allegations of disability were incredible were admissible as lay witness testimony in making a false statement to the government trial) United States v. McGinnis, 783 F.2d 755, 757 (8th Cir. 1986) (lay testimony of owner of stolen goods, not otherwise an expert, establishes value sufficient for 18 USC § 2315 charge) United States v. Oldrock, 867 F.3d 934, 940-41 (8th Cir. 2017) (lay testimony of therapist regarding process of forensic interview of abused child properly admitted under Rule 701); United States v. White Calf, 634 F. 3d 453, 461 (8th Cir. 2011) (lay testimony of police officer that victim of sexual abuse "looked like a grade schooler" admissible under Rule 701). In fact "immigration agents regularly testify about the absence of records in the CIS database and A-Files in their custody." United States v. Fajardo-Fajardo, 594 F.3d 1005, 1009 (8th Cir. 2010).

3. Video Evidence Admissibility

    a. Foundation

The Government intends to use and introduce portions of security video surveillance of the events that occurred on September 26, 2017. The recording was seized as evidence by law enforcement authorities investigating the present case. These recordings display the physical scene at issue in this case and defendant's possession of a firearm.

Admissibility of video recordings is within the sound discretion of the trial court and will not be reversed unless there has been an abuse of discretion. United States v. Martinez, 951 F.2d

8

887, 888 (8th Cir. 1991). Before introducing video recordings, "the Government must make a *prima facie* showing of the tape's trustworthiness." United States v. Webster, 84 F.3d 1056, 1964 (8th Cir. 1996). Historically, the foundation for a video's admissibility was determined by the criteria in United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974) for audio recordings. The McMillan criteria "while helpful, merely provide guidance to the district court" and are not essential to the authentication and admission of video. United States v. Clark, 986 F.2d 65, 68 (4th Cir. 1993); United States v. Roach, 28 F.3d 729, 733 (8th Cir. 1994) (video recording properly admitted without each formal McMillan foundational element).

The Government will present a witness that will attest to the physical layout of the store recorded by video, and to the retrieval of the video recording from the store shortly following the events depicted. The witness will testify that the equipment functioned as designed in that it fairly and accurately recorded the events depicted on the recordings. The witness will testify to the condition of the video recording once it was seized, and that the recording was properly preserved after obtained from the store, with no alterations or changes.

In Webster, the court considered a video showing the defendant involved in an exchange of something unidentifiable (later discovered to be crack cocaine) for cash and deemed it admissible. United States v. Webster, 84 F.3d at 1065. The Webster court found the recording admissible even when the audio track was unclear and the camera's view obscured. Id. With technological progress, courts have streamlined and drifted from the McMillan requirements and the foundation for admissibility has been described in a non-technical, common sense fashion. See United States v. Hughes, 658 F.2d 317, 322 (5th Cir. 1981).

9

For example, the very existence of a videotape with recorded materials itself proves the equipment functioned properly and that the operator of the equipment was competent to operate such a device. United States v. Roach, 28 F.3d 729, 732 (8th Cir. 1994). Additionally, admissibility is possible without testimony regarding authenticity and without testimony identifying the parties on the videotape. Id. Moreover, if the defendant wishes to contest the tape's admissibility, it is the defendant's obligation to show either that the tape has been altered or that the actions on the videotape were not voluntary. Id.

More recently, devices that automatically record information have been deemed to meet the McMillan criteria. See United States v. Wells, 347 F.3d 280 (8th Cir. 2003). In Wells, the court admitted recordings of phone numbers by cell phones and pagers. As in Roach, the Wells court found that the recording itself showed that the equipment functioned. Id. at 289. Additionally, the Wells court used the testimony of a law enforcement officer who stated he was able to obtain the numbers from the recordings. Id. These facts, plus no showing that there was reason to believe that law enforcement altered the recordings, led the court to admit the recordings into evidence. Id. Absent proof otherwise, a court may assume that a recording has not been altered and has been properly maintained. Id. Likewise, tapes are admissible when testimony from investigators indicate that they are "fair and accurate." United States v. Panas, 738 F.2d 278, 286 (8th Cir. 1984). This is particularly true when considering both sides are free to address the quality and interpretation of the tapes in their jury arguments. See United States v. Martinez, supra.

      b.      Narration

Because the actions of defendant are very rapid, the jury is likely to miss many relevant details on just one viewing of the video. For this reason, the Government will be pausing the video several times to provide narration from the case agent. The case agent has viewed the video multiple times, and from various camera angles, many of which will not be played before the jury. The case agent's knowledge of these other camera angles and intimate familiarity with the timing of events will aid the jury in their viewing of the evidence.

"An officer who has extensively reviewed a video may offer a narration, pointing out particulars that a casual observer might not see." United States v. Torralba-Mendia, 784 F.3d 652, 659 (9th Cir. 2015). Similar aids to jury understanding of video evidence have been approved by the Eighth Circuit. United States v. Fechner, 952 F.3d 954, 960 (8th Cir. 2020) (officer's summary with description of videos containing child pornography permissible); United States v. Ruiz, 446 F.3d 762, 771 (8th Cir. 2000) (permissible for agent to compile several videos into one to aid jury understanding). See also, Hill v. Norris, 2009 WL 3698002 (W.D. Ark. Nov. 2, 2009) (narration during video not objectionable when narration was true factual representation of display on video).

           Respectfully submitted,

           SAYLER A. FLEMING
           United States Attorney

           */s/ John J. Ware*
           JOHN J. WARE, #40880MO
           Assistant United States Attorney
           111 South 10th Street, Room 20.333
           St. Louis, Missouri 63102

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ John J. Ware*
JOHN J. WARE, #40880MO
Assistant United States Attorney