UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
UNITED STATES OF AMERICA

UNITED STATES OF AMERICA,    )
    Plaintiff,    )
        )
v.    )    Cause No.:    4:17-CR00532-HEA
        )
TALEB JAWHER,    )
    Defendant.    )

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW Taleb Jawher, by and through undersigned counsel, and submits this
Memorandum for the Court's consideration at Sentencing.  Mr. Jawher requests this Court
impose a sentence of time served and run said sentence concurrent to Mr. Jawher's related
Missouri sentence under Cause No. 1722-CR04173-01.  Mr. Jawher states as follows:

### FACTUAL BACKGROUND

On September 26, 2017, Mr. Jawher was working as a clerk at a Phillips 66 filling station
and convenience store located at 2800 North Florissant Avenue in St. Louis, Missouri.  A patron,
C.S., entered the convenience store appearing under the influence of an unknown substance.
C.S.'s apparent intoxication led Mr. Jawher to ask him to leave.  An argument ensued and C.S.
exited the store.  Mr. Jawher believed C.S. took an item of candy without paying.  After
obtaining the store owned gun, Mr. Jawher followed C.S. outside where an altercation ensued
and resulted in C.S. being shot in the back of his head.

The circumstances of the interaction between Mr. Jawher and C.S. were captured via
video surveillance from the Phillips 66.  The Pre-Sentence Report (hereinafter referred to as
"PSR") notes, however, "the surveillance footage is inaudible and is further limited to the events
captured exclusively within the vantage point of the security camera."  Doc. No. 162, p. 4, ℙ 8.

The PSR states that due to "the angle of the camera" portions of the fight prior to the firearm's discharge and the actual discharge of the firearm were not captured. Doc. No. 162, p. 4, ¶ 11. Further, "no known witness statements or accounts of the incident" exist. Doc. No. 162, p. 5, ¶ 13. Therefore, Mr. Jawher's statements to officers constitute the only evidence to understand the events which were not captured on video.

Mr. Jawher told police that "due to the (apparent) violent nature of the surrounding neighborhood and the uncertainty that C.S. may have been in possession of a weapon, [he] retrieved the 'store (owned) gun' for the purpose of self-protection" prior to following C.S. outside. Doc. No. 162, p. 6, ¶ 14. He told officers that "he did not know C.S. was unarmed." Doc. No. 162, p. 4, ¶ 11. Additionally, he told officers that "C.S. continued attacking him (while outside the store) to the extent that [Mr. Jawher] believed C.S. was either attempting to disarm him or was reaching for a firearm concealed in his (C.S.'s) waistband." Doc. No. 162, p. 6, ¶ 14. Finally, he told officers that he "struck C.S. in the back of the head with the butt of the firearm, which accidentally discharged and resulted in the death of C.S." Doc. No. 162, p. 6, ¶ 14.

## PROCEDURAL BACKGROUND

On October 18, 2017, Mr. Jawher was charged with Murder in the First Degree and Armed Criminal Action via Felony Complaint in *State of Missouri v. Taleb Rebhi Ali Jawher*, Cause No. 1722-CR04173. On November 15, 2017, Mr. Jawher was indicted in this Cause on one count of Unlawful Possession of a Firearm pursuant to 18 U.S.C. § 922(g)(5)(A) for the same events underlying the charges in 1722-CR04173. Doc. Nos. 1 & 2. Mr. Jawher was arrested on the warrant in this Cause on November 16, 2017. On January 9, 2018, the Grand Jury of the City of St. Louis returned an Indictment charging Mr. Jawher with Murder in the First

Degree and Armed Criminal Action in Cause No. 1722-CR04173-01. On May 7, 2018, Mr. Jawher entered his plea of guilty in this Cause. Doc. No. 50.

On January 23, 2019, a Sentencing Hearing was held in this Cause. Central to the argument at Sentencing was which guideline to apply to the Offense Level under U.S.S.G. § 2A1. The PSR cross-referenced and applied U.S.S.G. § 2A1.2 (Second Degree Murder). Doc. No. 67. Mr. Jawher argued that U.S.S.G. § 2A1.4 (Involuntary Manslaughter) applied and that a sixty (60) month term of imprisonment should be imposed by this Court. Doc. No. 72. The Government argued in support of the PSR in that § 2A1.2 applied and that a one hundred and twenty (120) month term of imprisonment be imposed by this Court (the statutory maximum). Doc. No. 73. Ultimately, the Court sentenced Mr. Jawher to a term of imprisonment of one hundred and nine (109) months. Doc. No. 79.

On February 18, 2022, Mr. Jawher entered a guilty plea in Cause No. 1722-CR04173-01 pursuant to an agreement reached between the parties. Specifically, the plea agreement was for Mr. Jawher to enter pleas of guilty to Involuntary Manslaughter (amended from Murder in the First Degree) and Armed Criminal Action. In exchange for Mr. Jawher's pleas of guilty, the State would recommend a seven (7) year sentence on the charge of Involuntary Manslaughter and a three (3) year sentence on the charge of Armed Criminal Action with sentences to run concurrent to each other and concurrent to any sentence received in this Cause. The court followed the plea agreement between the parties and sentenced Mr. Jawher accordingly. Doc. No. 162, p. 9, ⁋ 36.

Mr. Jawher appealed his guilty plea in this Cause based on the United States Supreme Court opinion rendered in *Rehaif*. *Rehaif v. United States*, 139 S.Ct. 2191, 2200 (2019) (stating that in cases where a defendant is charged with unlawfully possessing a firearm, the Government

must prove both possession of the firearm and that the defendant knew he or she belonged to the category of persons barred from such possession). On February 24, 2020, the Eighth Circuit filed its opinion wherein it reversed and remanded Mr. Jawher's case to this Court. *United States v. Jawher*, 950 F.3d 576 (8th Cir. 2020). On March 18, 2020, the Eighth Circuit's mandate was filed in this Court officially vacating the Judgment and Sentence of January 23, 2019. Doc. No. 106.

After remand, this Cause was initially scheduled for jury trial beginning on February 22, 2022. Doc. No. 138. However, on February 22, 2022, prior to the commencement of jury selection, Mr. Jawher decided to waive his right to jury trial and proceeded by way of a bench trial. Doc. No. 147. After a one-day bench trial, this Court took the matter under submission. Doc. No. 148. On March 7, 2022, an in-court Verdict Hearing was held wherein the Court announced that it found Mr. Jawher guilty. This Cause is currently scheduled for a Sentencing Hearing on Friday, August 12, 2022, at 11:00 AM.

## LEGAL AUTHORITY

In light of the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), it will be the Court's duty at the time of sentencing to impose the sentence which is "sufficient, but not greater than necessary." To fulfill the purposes of sentencing instructed by *Booker*, the Court should consider the factors outlined in 18 U.S.C. § 3553(a). *Booker*, 125 S.Ct. 738, 750-52, 764-66.

Although the mandate to sentence within the specified guidelines has been abolished by *Booker,* the Guidelines remain a factor the Court must "consider" before imposing sentence. 18 U.S.C. § 3553(a)(4). As a practical matter, it may make sense to determine the Guidelines first; although that is not to say they should receive the most weight. In fact, any special weight to the

guideline range relative to the Section 3553(a) factors would violate the Sixth Amendment. Thus, the guidelines are but one of the many factors to be considered. *United States v. Zavala*, 443 F.3d 1165, 1170-71 (9th Cir. 2006).

Courts are now permitted to tailor the sentence considering other statutory concerns, as well as the sentencing factors set forth in 18 U.S.C. § 3553. *Booker*, 125 S.Ct. 738, 757. In commenting on the post-*Booker* revolution to Federal sentencing procedure at the District Court level, the Supreme Court observed that historically "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States,* 552 U.S. 38, 52 (2007) (citing *Koon v. United States,* 518 U.S. 81, 113(1996)). In determining the sentence to be imposed, the Court shall consider the factors enumerated in Section 3553(a). Specifically, it is important for the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant. Further, Section 3553(a)(2) identifies the purposes of sentencing:

      (A)  provide just punishment for the offense;

      (B)  afford adequate deterrence to criminal conduct;

      (C)  protect the public from further crimes of the defendant; and

      (D)  provide the defendant with needed medical care or other correctional treatment in the most effective manner.

## SUMMARY OF ARGUMENT

I.        **Mr. Jawher concedes his commission of Unlawful Use of a Weapon, Exhibiting, pursuant to § 571.030.1(4), RSMo.  Therefore, U.S.S.G. § 2K2.1(b)(6)(B) applies and adds four points to his base offense level of 14.**

II.      **The most analogous offense to the incident-in-question is Involuntary Manslaughter and, thus, U.S.S.G. § 2A1.4 applies pursuant to the cross-reference under U.S.S.G. § 2K2.1(c)(1)(B).**

III.    **Sentencing Mr. Jawher concurrently to Cause No. 1722-CR04173-01 is justified as both cases involve the same incident and conduct.**

IV.    **Mr. Jawher exhibits conformity to positive values despite enduring physical and mental setbacks which supports the idea that prolonged incarceration is greater than necessary to achieve the goals of 18 U.S.C. § 3553(a).**

V.      **Imposing a sentence of time served furthers the policy initiatives set out by the Department of Justice by expediting Mr. Jawher's deportation to the benefit of the U.S. taxpayer.**

**ARGUMENT**

I.      Mr. Jawher concedes his commission of Unlawful Use of a Weapon, Exhibiting, pursuant to § 571.030.1(4), RSMo.  Therefore, U.S.S.G. § 2K2.1(b)(6)(B) applies and adds four points to his base offense level of 14.

In the interests of efficiency, Mr. Jawher re-states and re-incorporates § II of his

Sentencing Memorandum previously filed on January 3, 2019.  Doc. No. 72, pp. 2-3.

II.     The most analogous offense to the incident-in-question is Involuntary Manslaughter and, thus, U.S.S.G. § 2A1.4 applies pursuant to the cross-reference under U.S.S.G. § 2K2.1(c)(1)(B).

In the interests of efficiency, Mr. Jawher re-states and re-incorporates § II of his

Sentencing Memorandum previously filed on January 3, 2019.  Doc. No. 72, pp. 3-10.  Mr.

Jawher supplements his previous arguments with the arguments made herein.

Murder is the unlawful killing of another human being with malice aforethought.  18

U.S.C. § 1111.  Determining if one acted maliciously is not an analysis of subjective intent but

rather an analysis of whether the person's actions are "reckless and wanton, and a gross deviation

form a reasonable standard of care, of such a nature that a jury is warranted in inferring that

defendant was aware of a serious risk of death or serious bodily injury." *United States v. Black*

*Elk*, 579 F.2d 49, 51 (8t Cir. 1978).

Here, it was neither reckless, wanton, or a gross deviation from a reasonable standard of

care for an employee of a business to follow a patron who is believed to have stolen from the

business.  It is also neither reckless, wanton, or a gross deviation from a reasonable standard of

care for someone to arm himself before following an intoxicated, potential thief while in a high-

crime area.  It would be malicious had Mr. Jawher simply shot C.S. before getting near him.

Instead, Mr. Jawher did everything possible to apprehend C.S. without engaging in a physical

struggle.  Once apprehended and in proximity, C.S. attacked leading Mr. Jawher to reasonably

believe he was trying to take the firearm. What resulted is tragic. However, C.S.'s death was not the result of malicious actions taken by Mr. Jawher.

III. Sentencing Mr. Jawher concurrently to Cause No. 1722-CR04173-01 is justified as both cases involve the same incident and conduct.

Pursuant to 18 U.S.C. § 3584(a), "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Pursuant to 18 U.S.C. § 3584(b), "[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." Pursuant to USSG § 5G1.3(d), "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment."

Here, this case is directly related to the same incident and the same conduct as Cause No. 1722-CR04173-01. The court in Cause No. 1722-CR04173-01 ordered that sentence to run concurrent to any sentence imposed in this Cause. Obviously, the sentence in 1722-CR04173-01 does not inhibit this Court from ordering a consecutive sentence. However, a concurrent sentence furthers the goals set forth in 18 U.S.C. § 3553(a)(2), *see § IV*, *infra*, and diminishes any potential confusion in interpreting the sentences together.

IV. Mr. Jawher exhibits conformity to positive values despite enduring physical and mental setbacks which supports the idea that prolonged incarceration is greater than necessary to achieve the goals of 18 U.S.C. § 3553(a).

As stated above, under 18 U.S.C. § 3553(a), this Court can consider the nature and circumstances of the offense, and the history and characteristics of Mr. Jawher, when fashioning a sentence that is sufficient but not greater than necessary to achieve the goals of 18 U.S.C. § 3553(a). A sentence of time served will achieve the goals of 18 U.S.C. § 3553(a)(2) in that it

reflects the seriousness of the offense, provides just punishment, will afford adequate deterrence, and protect the public.

Mr. Jawher was born in Kuwait City, Kuwait to Rebhi Jawher (father) and Safa Mohammed Saeed (mother). Doc. No. 162, p. 10, ℙ 42. Mr. Jawher is the eldest of four siblings: Ahmad Jawher, Maha Jawher, Mohammed Jawher, and Hossam Jawher. Doc. No. 162, p. 10, ℙ 42. In 1991, the Jawher family relocated to Jordan primarily due to the increased freedoms they could experience. *See* Doc. No. 162, p. 11, ℙ 44. Mr. Jawher obtained Jordanian citizenship thereafter. He obtained the equivalent of a United States high school diploma upon graduating from Himasoum High School in 1996. Doc. No. 162, p. 13, ℙ 54. Thereafter, he obtained a college degree in Accounting from Al-Quds Open University in Palestine. Doc. No. 162, p. 13, ℙ 54. Mr. Jawher maintains close relationships with his family despite being incarcerated in another part of the world. While detained, Mr. Jawher's father died of heart failure, and Mr. Jawher was obviously unable to pay his respects. Doc. No. 162, p. 10, ℙ 42. Currently, Mr. Jawher's mother is experiencing complications due to diabetes. Doc. No. 162, p. 10, ℙ 42. Mr. Jawher sincerely desires to see his mother and hopes for her physical stability.

Mr. Jawher only came to the United States to obtain medical care he could not otherwise have received in the Middle East. *See* Doc. No. 162, pp. 11-12, ℙ 46. In 1996, Mr. Jawher was attacked by four males who struck his left eye with a wooden club embedded with nails. Doc. No. 162, p. 11, ℙ 46. One year later, he was struck again in his left eye by shrapnel following the detonation of one or more grenades by Israeli Defense Forces. Doc. No. 162, p. 11, ℙ 46. Mr. Jawher was rendered blind in his left eye necessitating medical care outside of the Middle East. In 2007, Mr. Jawher entered the United States and was fitted with a prosthetic glass eye. Doc. No. 162, p. 12, ℙ 46.

Around the same time of obtaining the prosthetic eye, Mr. Jawher met Brandi Harris. After a brief courtship, the two were married on October 27, 2008. Doc. No. 162, p. 10, ₧ 43. Mr. Jawher's marriage was the result of love and not for immigration purposes. The two remain faithful and committed to one another despite Mr. Jawher's incarceration for nearly five years. Mrs. Jawher has expressed that she will stay committed to Mr. Jawher through any period of incarceration imposed and/or Mr. Jawher's deportation. Mr. Jawher has not only been a faithful and devoted husband but also became a father-figure to Mrs. Jawher's daughter, Ariya Powell. Doc. No. 162, p. 11, ₧ 43. In part due to Mr. Jawher's guidance, Ms. Powell is enrolled in college and taking all necessary steps to be a productive citizen.[1]

Throughout Mr. Jawher's time in the United States (minus his current and future time of incarceration), he worked to provide for his family—both in the United States and abroad. His employment history illustrates his tireless work ethic as he would often work well over forty hours per week. Doc. No. 162, p. 14, ₧₧ 60-64. Until his detention, Mr. Jawher was never unemployed.

At age 44, Mr. Jawher has no criminal history outside of traffic convictions. *See* Doc. No. 162, pp. 8-9, ₧ 35. His lack of criminal history is not surprising as evidenced by his prior conduct, most notably, his conduct record during his time in the Bureau of Prisons. While incarcerated he received zero conduct violations and participated in financial and employment curriculums. Doc. No. 162, p. 9, ₧ 36.

---

[1] For additional evidence of Mr. Jawher's character, specifically, his relationship with his family, both immediate and extended, Mr. Jawher sincerely requests the Court read the Sentencing Letters submitted in conjunction with this Memorandum. Doc Nos. 173-178.

As a result of this Cause as well as the two violent attacks wherein Mr. Jawher was struck in his left eye, Mr. Jawher experienced night terrors and anxiety. In 2019, he was diagnosed with Post Traumatic Stress Disorder ("PTSD") by physicians in the Bureau of Prisons. Doc. No. 162, p. 12, ¶ 47. Mr. Jawher is prescribed anti-anxiety medication which assists in alleviating his anxiety. As noted in the PSR, the above-referenced incidents likely contributed to Mr. Jawher perceiving C.S. as a threat in the instant offense and, in addition to his PTSD diagnosis, are mitigating factors for the Court's consideration. Doc. No. 162, pp. 17-18, ¶ 88.

V.      Imposing a sentence of time served furthers the policy initiatives set out by the Department of Justice by expediting Mr. Jawher's deportation to the benefit of the U.S. taxpayer.

The Department of Justice's policy is to "deport all criminal aliens as expeditiously as possible" and thus "[a]ll deportable criminal aliens should be deported unless extraordinary circumstances exist." Memorandum From the Attorney General to All Federal Prosecutors on Deportation of Criminal Aliens (Apr. 28, 1995); *See also* United States Attorneys' Manual § 9-73.510 (2010). The total immigrant population, including both those with documented and undocumented status, is now so large that the number of immigrants in American prisons and jails is very significant. DHS Office of Immigration Statistics, *Estimates of the Unauthorized Immigrant Population Residing in the United States: January 2010*, at 3, tbl. 2 (2011). At the same time, many state prisons and local jail systems have experienced overcrowding so severe that the United States Supreme Court, some lower federal courts, and many state courts have found the resulting conditions of incarceration unconstitutional. Peter H. Schuck, *Immigrant Criminals in Overcrowded Prisons: Rethinking an Anachronistic Policy*, 27 Geo. Immigr. L.J. 597, 597–98 (2013).

As noted in the PSR, the average cost to house an inmate in the Bureau of Prisons is $3,688.00 per month. Doc. No. 162, pp. 16-17, ¶ 79. Mr. Jawher has served approximately four years and nine months thus far. If this Court imposes the statutory maximum ten-year sentence, Mr. Jawher could serve an additional five years and three months. This would cost $232,344.00. *See* Doc. No. 162, pp. 16-17, ¶ 79. Although the Court could impose a fine to cover the cost of confinement, Mr. Jawher has a negative net worth and, therefore, unable to pay such a fine. Doc. No. 162, p. 15, ¶ 65; Doc. No. 162, pp. 16-17, Doc. No. 162, pp. 16-17, ¶ 79. Therefore, Mr. Jawher would cost the United States taxpayers a maximum of $234,344.00 to then be deported back to Jordan.

Mr. Jawher understood the inevitability of deportation upon his guilty plea and sentence in Cause No. 1722-CR04173-01. Upon information and belief, the plea agreement reached in Cause No. 1722-CR04173-01 was due not only to the nature and circumstances of the offense but also due to Mr. Jawher's concession to deportation. Additionally, the amount of time Mr. Jawher has already served for that sentence effectually satisfies the percentage of time necessary for release on parole. Therefore, the sentence in said cause expedites the deportation process.

Here, the most logical sentence to impose is time served. Such a sentence is congruent to the policy of the Department of Justice, reduces the problem of overcrowding in detention facilities, and furthers the interests of the U.S. taxpayer.

**CONCLUSION**

WHEREFORE Defendant respectfully requests this Court to consider the arguments contained in this Sentencing Memorandum and impose a sentence of time served concurrent to the related Missouri sentence under Cause No. 1722-CR04173-01.

Respectfully Submitted,

 /s/ Phil Scanlon
Phil Scanlon, #67189MO
Attorney for Defendant
Kessler Williams, LLC
1401 S. Brentwood Blvd., Ste. 950
St. Louis, MO 63144
T: (314) 863-6363
D: (314) 455-5555
F: (314) 727-2869
phil.scanlon@kesslerwilliams.com

## Certificate of Service

I hereby certify that on this 5th day of August, 2022, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court in the United States District Court, Eastern District of Missouri and served by operation of the Court's electronic filing system upon all attorneys of record.

 /s/ Phil Scanlon
Phil Scanlon, #67189MO
Attorney for Defendant